**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| JAMES E. SHELTON, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff /<br>　　　　Counterclaim-Defendant,<br><br>v.<br><br>UNITED RENTALS, INC.<br><br>　　　　Defendant /<br>　　　　Counterclaim-Plaintiff. | Case No. 3:24-cv-01774-VDO<br><br><br><br><br><br><br><br><br><br><br>JANUARY 29, 2025 |

**UNITED RENTALS' AMENDED ANSWER AND DEFENSES**
**TO THE CLASS ACTION COMPLAINT**

**AND**

**UNITED RENTALS' COUNTERCLAIMS AGAINST JAMES E. SHELTON**

## UNITED RENTALS' AMENDED ANSWER AND DEFENSES
## TO THE CLASS ACTION COMPLAINT

Defendant / Counterclaim-Plaintiff United Rentals, Inc.[1] ("United Rentals"), by and through its undersigned counsel, hereby submits the following Amended Answer and Defenses to the Class Action Complaint filed on November 7, 2024, by Plaintiff / Counterclaim-Defendant James E. Shelton ("Shelton").

United Rentals denies all allegations in the Complaint that are not specially admitted in this Amended Answer, including all allegations contained in the headings and all unnumbered or introductory paragraphs in the Complaint.

### GENERAL DENIAL

United Rentals generally denies any allegation of unlawful conduct. United Rentals further denies that Shelton has suffered, or will suffer, any injury or damages, costs, or expenses, including attorneys' fees, in the manner or sum alleged, or in any manner or sum whatsoever, by reason of any act, breach, or omission of United Rentals or its predecessors, successors, agents, employees, or representatives.

United Rentals provides its amended answers to the allegations in the numbered paragraphs of the Complaint as follows:

### I.    INTRODUCTION

1.    The allegations in Paragraph 1 constitute legal conclusions to which no response is required. To the extent a response is required, United Rentals states that *Barr v. Am. Ass'n of Political Consultants,* 140 S. Ct. 2335 (2020) speaks for itself, and United Rentals denies any

---

[1] Shelton incorrectly named United Rentals, Inc. as the defendant in this action. The correct party should be United Rentals (North America), Inc. To that end, the proper Counterclaim-Plaintiff asserting the counterclaims herein against Shelton is also United Rentals (North America), Inc.

allegations in Paragraph 1 to the extent they mischaracterize *Barr*. United Rentals denies any remaining allegations in Paragraph 1.

2.      United Rentals admits that Shelton makes the allegations in Paragraph 2, but otherwise denies the allegations in Paragraph 2.

3.      United Rentals admits that Shelton purports to bring this case as a nationwide class action. United Rentals denies that the putative class is properly defined and denies that class certification, including class-wide relief of any kind, is appropriate in this case. United Rentals denies the remaining allegations in Paragraph 3.

4.      United Rentals denies the allegations in Paragraph 4.

## II.      PARTIES

5.      United Rentals lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 5, and therefore denies the allegations in Paragraph 5.

6.      United Rentals admits the allegations in Paragraph 6.

## III.      JURISDICTION AND VENUE

7.      The allegations in Paragraph 7 constitute legal conclusions to which no response is required. To the extent a response is required, United Rentals admits that jurisdiction is proper in this Court. United Rentals denies any remaining allegations in Paragraph 7.

8.      The allegations in Paragraph 8 constitute legal conclusions to which no response is required. To the extent a response is required, United Rentals admits that this Court may exercise personal jurisdiction over United Rentals. United Rentals denies any remaining allegations in Paragraph 8.

9.      The allegations in Paragraph 9 constitute legal conclusions to which no response is required. To the extent a response is required, United Rentals admits that venue is proper in this District. United Rentals denies any remaining allegations in Paragraph 9.

## IV.    FACTS

10.    The allegations in Paragraph 10 constitute legal conclusions to which no response is required. To the extent a response is required, United Rentals states that the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (the "TCPA") is a series of written statutes that speak for themselves, and United Rentals denies any allegations in Paragraph 10 to the extent they mischaracterize the TCPA. United Rentals denies any remaining allegations in Paragraph 10.

11.    The allegations in Paragraph 11 constitute legal conclusions to which no response is required. To the extent a response is required, United Rentals states that the TCPA is a series of written statutes that speak for themselves, and United Rentals denies any allegations in Paragraph 11 to the extent they mischaracterize the TCPA. United Rentals denies any remaining allegations in Paragraph 11.

12.    The allegations in Paragraph 12 constitute legal conclusions to which no response is required. To the extent a response is required, United Rentals states that the TCPA is a series of written statutes that speak for themselves, and United Rentals denies any allegations in Paragraph 12 to the extent they mischaracterize the TCPA. United Rentals denies any remaining allegations in Paragraph 12.

13.    The allegations in Paragraph 13 constitute legal conclusions to which no response is required. To the extent a response is required, United Rentals states that findings from the Federal Communication Commission ("FCC") are written documents that speak for themselves, and United Rentals denies any allegations in Paragraph 13 to the extent they mischaracterize the FCC's findings. United Rentals denies any remaining allegations in Paragraph 13.

14.    The allegations in Paragraph 14 constitute legal conclusions to which no response is required. To the extent a response is required, United Rentals states that *Barr v. Am. Ass'n of Political Consultants,* 140 S. Ct. 2335 (2020) speaks for itself, and United Rentals denies any

allegations in Paragraph 14 to the extent they mischaracterize *Barr*. United Rentals denies any remaining allegations in Paragraph 14.

15.     The allegations in Paragraph 15 constitute legal conclusions to which no response is required. To the extent a response is required, United Rentals states that *Perrong v. Victory Phones LLC,* No. CV 20-5317, 2021 WL 3007258 (E.D. Pa. July 15, 2021) speaks for itself, and United Rentals denies any allegations in Paragraph 15 to the extent they mischaracterize *Perrong*. United Rentals denies any remaining allegations in Paragraph 15.

16.     The allegations in Paragraph 16 constitute legal conclusions to which no response is required. To the extent a response is required, United Rentals states that the findings of the Federal Communication Commission ("FCC"), including FCC Enforcement Advisory: Tel. Consumer Prot. Act Robocall & Text Rules - Biennial Reminder for Pol. Campaigns About Robocall & Text Abuse, 31 FCC Red. 1940 (2016), are written documents that speak for themselves, and United Rentals denies any allegations in Paragraph 16 to the extent they mischaracterize the FCC's findings. United Rentals denies any remaining allegations in Paragraph 16.

17.     The allegations in Paragraph 17 constitute legal conclusions to which no response is required. To the extent a response is required, United Rentals states that *Perrong v. Victory Phones LLC,* No. CV 20-5317, 2021 WL 3007258 (E.D. Pa. July 15, 2021) speaks for itself, and United Rentals denies any allegations in Paragraph 17 to the extent they mischaracterize *Perrong*. United Rentals denies any remaining allegations in Paragraph 17.

18.     The allegations in Paragraph 18 constitute legal conclusions to which no response is required. To the extent a response is required, United Rentals admits the allegations in Paragraph 18, upon information and belief.

19.    United Rentals lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 19, and therefore denies the allegations in Paragraph 19.

20.    United Rentals lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 20, and therefore denies the allegations in Paragraph 20.

21.    United Rentals lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 21, and therefore denies the allegations in Paragraph 21.

22.    The allegations in Paragraph 22 constitute legal conclusions to which no response is required. To the extent a response is required, United Rentals lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 22, and therefore denies the allegations in Paragraph 22.

23.    United Rentals lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 23, and therefore denies the allegations in Paragraph 23.

24.    United Rentals lacks information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 24, and therefore denies the allegations in Paragraph 24.

25.    United Rentals lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 25, and therefore denies the allegations in Paragraph 25.

26.    United Rentals denies the allegations in Paragraph 26.

27.    United Rentals lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 27 regarding the content of the messages Shelton allegedly received, and therefore denies those allegations in Paragraph 27. United Rentals denies any remaining allegations in Paragraph 27.

28.    United Rentals lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 28, and therefore denies the allegations in Paragraph 28.

29.     The allegations in Paragraph 29 constitute legal conclusions to which no response is required. To the extent a response is required, United Rentals lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 29 regarding the content of the messages Shelton allegedly received, and therefore denies those allegations in Paragraph 29. United Rentals denies any remaining allegations in Paragraph 29.

30.     United Rentals admits that an agent placed a phone call to the telephone number (215)-XXX-XXXX on this date but denies the remaining allegations in Paragraph 30.

31.     United Rentals admits that an agent placed a phone call to the telephone number (215)-XXX-XXXX but denies the remaining allegations in Paragraph 31.

32.     United Rentals denies the allegations in Paragraph 32.

33.     United Rentals lacks information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 33, and therefore denies the allegations in Paragraph 33.

34.     United Rentals lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 34, and therefore denies the allegations in Paragraph 34.

35.     United Rentals denies the allegations in Paragraph 35.

36.     United Rentals lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 36, and therefore denies the allegations in Paragraph 36.

37.     The allegations in Paragraph 37 constitute legal conclusions to which no response is required. To the extent a response is required, United Rentals denies the allegations in Paragraph 37.

38.     United Rentals lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 38, and therefore denies the allegations in Paragraph 38.

39.     United Rentals admits that Shelton purports to bring this case as a nationwide class action. United Rentals denies that the putative class is properly defined and denies that class certification, including class-wide relief of any kind, is appropriate in this case. United Rentals denies the remaining allegations in Paragraph 39.

## V.     CLASS ACTION ALLEGATIONS

40.     United Rentals admits that Shelton purports to bring this case as a nationwide class action. United Rentals denies that the putative class is properly defined and denies that class certification, including class-wide relief of any kind, is appropriate in this case. United Rentals denies the remaining allegations in Paragraph 40.

41.     United Rentals admits that Shelton purports to bring this case as a nationwide class action. United Rentals denies that the putative class is properly defined and denies that class certification, including class-wide relief of any kind, is appropriate in this case. United Rentals denies the remaining allegations in Paragraph 41.

42.     United Rentals admits that Shelton purports to bring this case as a nationwide class action. United Rentals denies that the putative class is properly defined and denies that class certification, including class-wide relief of any kind, is appropriate in this case. United Rentals denies the remaining allegations in Paragraph 42.

43.     United Rentals admits that Shelton purports to bring this case as a nationwide class action. United Rentals denies that the putative class is properly defined and denies that class certification, including class-wide relief of any kind, is appropriate in this case. United Rentals denies the remaining allegations in Paragraph 43.

44.     The allegations in Paragraph 44 constitute legal conclusions to which no response is required. To the extent a response is required, United Rentals denies the allegations in Paragraph 44.

45.    United Rentals denies the allegations in Paragraph 45.

46.    United Rentals admits that Shelton purports to bring this case as a nationwide class action. United Rentals denies that the putative class is properly defined and denies that class certification, including class-wide relief of any kind, is appropriate in this case. Moreover, the allegations in Paragraph 46 constitute legal conclusions to which no response is required. To the extent a response is required, United Rentals denies the allegations in Paragraph 46.

47.    United Rentals admits that Shelton purports to bring this case as a nationwide class action. United Rentals denies that the putative class is properly defined and denies that class certification, including class-wide relief of any kind, is appropriate in this case. United Rentals denies the allegations in Paragraph 47.

48.    United Rentals admits that Shelton purports to bring this case as a nationwide class action seeking injunctive relief and monetary damages. United Rentals denies that the putative class is properly defined and denies that class certification, including class-wide relief of any kind, is appropriate in this case. To the extent a response is required, United Rentals denies the allegations in Paragraph 48.

49.    United Rentals admits that Shelton purports to bring this case as a nationwide class action. United Rentals denies that the putative class is properly defined and denies that class certification, including class-wide relief of any kind, is appropriate in this case. Moreover, the allegations in Paragraph 49 constitute legal conclusions to which no response is required. To the extent a response is required, United Rentals denies the allegations in Paragraph 49, including all subparts.

50.    United Rentals admits that Shelton purports to bring this case as a nationwide class action. United Rentals denies that the putative class is properly defined and denies that class

certification, including class-wide relief of any kind, is appropriate in this case. Moreover, the allegations in Paragraph 50 constitute legal conclusions to which no response is required. To the extent a response is required, United Rentals denies the allegations in Paragraph 50.

51.     United Rentals admits that Shelton purports to bring this case as a nationwide class action. United Rentals denies that the putative class is properly defined and denies that class certification, including class-wide relief of any kind, is appropriate in this case. Moreover, the allegations in Paragraph 51 constitute legal conclusions to which no response is required. To the extent a response is required, United Rentals denies the allegations in Paragraph 51.

52.     United Rentals denies the allegations in Paragraph 52.

53.     United Rentals denies the allegations in Paragraph 53.

54.     United Rentals denies the allegations in Paragraph 54.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227(b))**
**(On Behalf of Shelton and the Robocall Class)**

55.     United Rentals incorporates its responses to the above paragraphs as if fully set forth herein.

56.     United Rentals denies the allegations in Paragraph 56.

57.     United Rentals denies the allegations in Paragraph 57.

58.     United Rentals denies the allegations in Paragraph 58.

59.     United Rentals admits that Shelton purports to bring this case as a nationwide class action. United Rentals denies that the putative class is properly defined and denies that class certification, including class-wide relief of any kind, is appropriate in this case. United Rentals denies any remaining allegations in Paragraph 59.

## SHELTON'S PRAYER FOR RELIEF

Answering the allegations in Shelton's prayer for relief, United Rentals denies that this case is suitable for class treatment. United Rentals denies that Shelton and the putative class are entitled to any relief. United Rentals denies the remaining allegations in the Prayer for Relief, including all subparts.

## DEMAND FOR JURY

United Rentals demands a trial by jury on all issues so triable.

\* \* \* \*

## UNITED RENTALS' DEFENSES

Without assuming the burden of proof where it otherwise rests with Shelton, United Rentals pleads the following defenses to the Complaint:

### FIRST DEFENSE
### (Failure to State a Claim)

The Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE
### (Statute of Limitations)

Shelton's claims and those of the putative class members may be barred by an applicable statute, including, but not limited to, the statute of limitations set forth in 28 U.S.C. § 1658.

### THIRD DEFENSE
### (Consent)

Shelton's claims and the claims of putative class members are barred, in whole or in part, to the extent Shelton and/or any person he purports to represent provided "prior express consent" within the meaning of the TCPA for calls allegedly placed by United Rentals.

**FOURTH DEFENSE**
**(Laches and Unclean Hands)**

Shelton's claims and those of the putative class members are barred, in whole or in part, by the doctrine of laches and/or unclean hands.

**FIFTH DEFENSE**
**(Waiver, Release, Estoppel)**

Shelton's claims and those of the putative class members are barred, in whole or in part, by the doctrines of waiver, release, and/or estoppel.

**SIXTH DEFENSE**
**(Failure to Mitigate Damages)**

To the extent Shelton and/or any putative class member suffered any damage due to the matters alleged in the Complaint, Shelton and any person he purports to represent failed to mitigate those damages and the claims are therefore barred, in whole or in part.

**SEVENTH DEFENSE**
**(Due Process)**

The imposition of liability and/or statutory damages of up to $1,500 per call under the TCPA would violate provisions of the United States Constitution, including the Due Process Clause, on the grounds, among others, that the recovery of statutory damages of up to $1,500 per call would be wholly disproportionate to the offense and unreasonable.

**EIGHTH DEFENSE**
**(Not Knowing or Willful)**

Shelton and any person he purports to represent may be precluded from any recovery for a willful and knowing violation of the TCPA because any such violation (which United Rentals denies occurred) would not have been willful or knowing. At all times, United Rentals acted in good faith and had reasonable grounds for believing its actions complied with the TCPA.

## NINTH DEFENSE
### (Class Certification Not Proper)

The claims alleged in the Complaint may not be properly certified or maintained as a class action. Shelton has failed to adequately allege all the elements necessary to establish a valid class action under Rule 23 of the Federal Rules of Civil Procedure. Shelton is not an appropriate class representative because his claims are not common and/or typical of the claims of the other purported class members. Shelton's claims are inappropriate for class treatment because there are no common questions of law or fact, and Shelton would not adequately represent the members of the putative class.

## TENTH DEFENSE
### (Res Judicata/Collateral Estoppel))

To the extent the evidence in this case reveals that Shelton's claims or the claims of putative class members are subject to the doctrines of Res Judicata, Collateral Estoppel, Claim Preclusion or Issue Preclusion, United Rentals asserts that such doctrines bar Shelton's and the putative class members' claims in this action.

## ELEVENTH DEFENSE
### (Failure to Join an Indispensable Party or Misjoinder of Party)

Shelton's claims and those of the putative class members are barred, in whole or in part, because Shelton failed to join an indispensable party and/or misjoined a party.

## TWELFTH DEFENSE
### (Safe Harbor)

Shelton's claims and those of the putative class members are barred, in whole or in part, by the Safe Harbor provisions in 47 U.S.C. § 227(c)(5)(C) and 47 C.F.R. §§ 64.1200(c)(2) and (d).

## THIRTEENTH DEFENSE
### (No Automatic Dialer)

Shelton's claims and the claims of putative class members are barred, in whole or in part, by the definition of "automatic telephone dialing system" as that term is used in the TCPA, since it does not encompass the manner by which United Rentals and its agents initiate calls.

* * * *

United Rentals hereby gives notice that it intends to rely upon any other defense that may become available or appear during the proceedings in this case, including defenses that may apply to any unnamed members of the putative class which Shelton seeks to represent, and hereby reserves its rights to amend its Amended Answer and Defenses to assert any such defense.

WHEREFORE, United Rentals requests that judgment be entered in its favor, that the claims asserted in the Class Action Complaint be dismissed with prejudice, and that the Court grant United Rentals such other relief as may be just and proper, including, but not limited to, an award of costs and fees.

* * * *

## UNITED RENTALS' COUNTERCLAIMS
## AGAINST JAMES E. SHELTON

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Defendant / Counterclaim-Plaintiff United Rentals (North America), Inc. ("United Rentals"), by and through its attorneys, brings the following counterclaims against Plaintiff / Counterclaim-Defendant James E. Shelton, stating as follows:

### I.    PARTIES

1.      United Rentals is an equipment rental company, incorporated under the laws of Connecticut and with its headquarters and principal place of business in Stamford, Connecticut.

2.      James E. Shelton is an individual who, on information and belief, is a citizen of and resides in the state of Pennsylvania.

### II.    JURISDICTION AND VENUE

3.      This Court has jurisdiction over United Rentals' counterclaims within the meaning of Rule 13 of the Federal Rules of Civil Procedure because there is a "logical relationship" between the counterclaims and the main claim in this action. *See Jones v. Ford Motor Credit Co*., 358 F.3d 205, 209 (2d Cir. 2004).

4.      United Rentals' counterclaims are compulsory counterclaims because they arise out of the same transaction or occurrence that is the subject matter of Shelton's Complaint, now pending before this Court, and would rely on and require the same evidence necessary to prove United Rentals' defenses to the underlying TCPA action asserted by Shelton's Complaint. Shelton has incorrectly named United Rentals, Inc. as the defendant in this action. The correct party should be United Rentals (North America), Inc. As such, at the time that the proper defendant is substituted, these compulsory counterclaims do not require the addition of another party. United

Rentals reserves the right to reassert these compulsory counterclaims on behalf of United Rentals (North America), Inc. if and when the proper defendant is named as a party to this action.

5.    Jurisdiction over United Rentals' counterclaims is appropriate and conferred by 28 U.S.C. § 1367(a), which provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

6.    United Rentals' counterclaims and Shelton's underlying TCPA claim bear a sufficient factual relationship to constitute the same "case" within the meaning of Article III.

7.    To the extent the counterclaims are permissive, Supplemental Jurisdiction remains proper and is not appropriate to decline under any provision of 28 U.S.C. § 1367(c).

8.    Venue is proper with this Court under 28 U.S.C. § 1391(b)(1) since United Rentals is a defendant in this case, and its principal place of business is located in this District.

### III.    FACTUAL ALLEGATIONS

**A.    United Rentals Employees Manually Initiate Calls to Customers**

9.    United Rentals offers equipment rentals to an expansive range of customers including construction and industrial companies; public and private utilities; municipalities; and even homeowners. In addition to equipment rentals, United Rentals also sells new and used equipment, offers equipment servicing, and conducts safety training.

10.    As part of its sales efforts, United Rentals employees in its Outbound Sales Department place calls to former or current customers.

11.    Employees in the United Rentals Outbound Sales Department place telephone calls manually.

12.     Employees in the United Rentals Outbound Sales Department do not use an automatic telephone dialing system (or "ATDS") to initiate telephone calls.

13.     The intended purpose of calls by the United Rentals Outbound Sales Department, generally, is to actually speak to the called party about their rental equipment needs.

**B.      United Rentals Had Express Consent to Call Charles W. Romano Company**

14.     According to United Rentals' business records, the phone referenced in Paragraph 19 of the Complaint, (215)-XXX-XXXX, was the contact telephone number associated with a Pennsylvania-based construction business called Charles W. Romano Company ("CWR").

15.     CWR rented equipment from United Rentals prior March 2024.

16.     Phillip Flemming was annotated as the person "in charge" of ordering rental equipment on behalf of CWR.

17.     CWR provided this information to United Rentals, as well as CWR's express consent to be contacted at (215)-XXX-XXXX, as part of an application for a line-of-credit that was still open in early 2024.

18.     On or about March 8, 2024, a United Rentals employee called (215)-XXX-XXXX (the "March 8 Call").

19.     The call was placed and initiated manually by an employee in the United Rentals Outbound Sales department.

20.     A male voice answered the March 8 Call.

21.     A certified transcript of the original audio recording from the March 8 Call is attached as **<u>Exhibit A</u>**.[2]

_____

[2] United Rentals will provide the Court with the original audio recordings referenced here.

22. The employee opened by asking: "Hi, good morning, this is Carrie with United Rentals on a recorded line. May I speak with Phillip, please?" Ex. A, Tr. at 2:1-3.

23. The answering party replied affirmatively: "Yeah, how can I help you?" Ex. A, Tr. at 2:4.

24. So, the employee continued: "Hey, Phillip, are you still the person who's in charge of ordering rental equipment for an open account for Charles W. Romano Company?" Ex. A, Tr. at 2:5-7.

25. Again, the answering party replied affirmatively: "Mm, yeah." Ex. A, Tr. at 2:8.

26. The conversation between the United Rentals employee and the person claiming to be "Phillip" went on for almost 12 minutes. They discussed CWR's business needs, CWR's open line of credit with United Rentals, and rental equipment that "Phillip" might need in the future. *See generally* Ex. A, Tr.

27. The employee and "Phillip" even discussed some of the construction jobs that CWR was purportedly working on. For example, "Phillip" volunteered information about an upcoming project at an Airbnb property in the Poconos and suggested to the employee that he might need to rent large equipment like cranes or a "boom lift" for "at least a week." Ex. A, Tr. at 4:18–6:12.

28. At one point, the employee sought to confirm the contact information for CWR. She asked: "Is this always the best number to reach you, which is the 215-XXX-XXXX?" And "Phillip" responded: "Yeah. That's my cell phone." Ex. A, Tr. at 4:5-8.

29. The employee also asked "Phillip" to verify the email address for CWR and read aloud the email that United Rentals had on file. In response, "Phillip" said: "Let me give you a good email address. It's going to be j-e-s-h-e-l-t-o-n-595@gmail.com." The employee repeated the email address back to him, and "Phillip" confirmed. Ex. A, Tr. at 4:9-17.

30.     Later in the call, "Phillip" asked the employee, "Well, can you send me over an email with you guys' info, and I can give you a call back whenever we're ready to move forward?" Ex. A, Tr. at 8:3-5.

31.      As the conversation neared its conclusion, the employee asked "Phillip" if he would like her to be his "single point of contact" at United Rentals for future business projects with equipment rental needs. To that end, she offered, "You can text me, you can email me, or you could just give me a phone call." Ex. A, Tr. at 7:1-16.

32.     She further stated:

> … ***I will just follow up with you, because I like to be proactive***. You said you do rent quite often – ***So maybe what we might start doing is just maybe doing a monthly follow-up with you*** and get a list of the different bids you guys might be working on, or the different projects that you guys might be working on…

Ex. A, Tr. at 7:1-16 (emphasis added).

33.     "Phillip" did not object to receiving monthly follow-up calls from United Rentals, answering only, "Right." Ex. A, Tr. at 7:17.

34.     Instead, the March 8 Call between ended with "Phillip" giving his express consent to be contacted for monthly follow-ups by phone:

> **UNITED RENTALS:** So, I will definitely send you an email with all of my contact information, a list of … just a brief list of some of the services that we do offer. In that email, you will have a link to our catalog. … I'll go ahead and send you an email, so you have all of this information. Okay?

> **ANSWERING PARTY:  Okay. Thank you.**

> **UNITED RENTALS:** Of course. Of course. Always feel free to reach out via text, email, or phone call if anything comes up or you have any questions between now – And I'll probably reach out probably within another week and a half, just check in on you and see if you guys were awarded that bid, okay?

> **ANSWERING PARTY:  All right. That sounds good. Thank you.**

Ex. A, Tr. at 9:10–10:9.

35.     The answering party during the March 8 Call represented to United Rentals' employee that he was "Phillip" and was the person "in charge" of ordering rental equipment for CWR. Ex. A, Tr. at 2:1-8. There was no reason for United Rentals' employee to suspect otherwise.

36.     The answering party during the March 8 Call further represented to United Rentals' employee that (215)-XXX-XXXX was his "cell phone" number and that he used it for business purposes in connection with CWR. Ex. A, Tr. at 4:5-17. He even agreed that United Rentals could contact him in the future at (215)-XXX-XXXX to discuss CWR's business needs and check in on upcoming projects and bids. Ex. A, Tr. at 9:10–10:9. There was no reason for United Rentals' employee to believe "Phillip" did not want to be contacted again.

37.     The answering party during the March 8 Call even volunteered this information to United Rentals' employee, by agreeing that (215)-XXX-XXXX was "always the best number" to reach him and even providing jeshelton595@gmail.com as a "good email address." Ex. A, Tr. at 4:5-17. There was no reason for United Rentals' employee to suspect this information belonged to anyone other than "Phillip," the person "in charge" of ordering rentals on behalf of CWR.

38.     Later that day, the same employee sent the information "Phillip" requested to the email address obtained during the March 8 Call: jeshelton595@gmail.com (the "March 8 Email").

39.     Among other things, the March 8 Email read: "Hi Phillip, It was a pleasure speaking with you this morning about the rental account for Charles W Romano Inc. … Thank you for the opportunity to be of service and I look forward to speaking with you around the 20th of March."

40.     United Rentals did not receive a response to the March 8 Email.

41.     On or about September 18, 2024, the same United Rentals employee called (215)-XXX-XXXX to follow-up with "Phillip"—just as she promised she would.

42.     The call was placed manually and initiated by the employee.

43.     This time, however, there was no answer, so she opted to leave "Phillip" a pre-recorded voicemail that she created using her own voice (the "September 18 Voicemail").

44.     A certified transcript of the original audio recording from the September 18 Voicemail is attached as **Exhibit B**.

45.     "Phillip" did not return the call or respond to the September 18 Voicemail.

46.     On or about October 1, 2024, the same United Rentals employee called (215)-XXX-XXXX to follow-up with "Phillip" again—just as she promised she would.

47.     The call was placed manually and initiated by the employee.

48.     But again, there was no answer, so she opted to leave "Phillip" a pre-recorded voicemail that she created using her own voice (the "October 1 Voicemail").

49.     A certified transcript of the original audio recording from the October 1 Voicemail is attached as **Exhibit C**.

50.     "Phillip" did not return the call or respond to the October 1 Voicemail.

51.     On or about October 11, 2024, the same United Rentals employee called (215)-XXX-XXXX to continue her efforts to follow-up with "Phillip" about CWR's line of credit, business projects, and equipment needs—just as she promised she would.

52.     The call was placed manually and initiated by the employee, and a male voice answered the call (the "October 11 Call").

53.     Importantly, the same person that answered the March 8 Call—and spoke at length with the employee about CWR—also answered the October 11 Call.

54.     A certified transcript of the original audio recording from the October 11 Call is attached as **Exhibit D**.

55.     As before, the employee started with: "Hi, this is Carrie with United Rentals on a recorded line. May I speak with Phillip, please?" Ex. D, Tr. at 2:1-3.

56.     The answering party responded: "How can I help you?" Ex. D, Tr. at 2:4.

57.     Recognizing that it was the same person she spoke with during the March 8 Call, the employee stated:

> Hey, Phillip, I am actually calling about the open rental account that you guys have set up for Charles W. Romano Company. I don't know if you remember or not, it's been quite a while ago, we spoke back in March about the account, and as promised I'm just following up with you to see what bids or what projects you guys might be working on between now and the end of the year and how we can help you out.

Ex. D, Tr. at 2:5-11.

58.     But "Phillip" retorted: "Carrie, how did you get my number?" Ex. D, Tr. at 2:12.

59.     Surprised by his reaction, the employee told "Phillip" that his number was still linked to the United Rentals account for CWR. She also reminded him of the March 8 Call, where they discussed CWR's open credit account. Ex. D, Tr. at 2:13-24.

60.     But "Phillip" claimed he was "not really sure what [she] w[as] talking about." Ex. D, Tr. at 2:13-24.

61.     Still puzzled, the employee asked: "I'm showing that you were listed as the person that was in charge of ordering rental equipment. You're Phillip Fleming, is that correct?" Ex. D, Tr. at 3:1-3.

62.     It was only then that "Phillip" revealed his true identity:

**SHELTON:**  So, here's the deal, Carrie.

**UNITED RENTALS:**  Okay.

**SHELTON:** I'm not Phillip. It sounds to me like you're calling … you were trying to reach somebody else. So, I'm James.

**UNITED RENTALS:** Okay.

**SHELTON:** Do you guys … do you guys … do you guys, is it possible that you're calling the previous owner of the phone?

**UNITED RENTALS:** I'm not sure. The only number … so the thing that's so odd is this, the email address is J. E. Shelton. Is that you?

**SHELTON:** That is my email address.

**UNITED RENTALS:** Okay. Why would it have Phillip Fleming as the name on the account?

**SHELTON:** Would it have been because you guys called me back in March and I gave you that information so that I could find out what was going on?

Ex. D, Tr at 3:1-19.

63.     The rest of the October 11 Call between United Rentals' employee and Shelton reveals Shelton's attempt to extract the information he planned to use to file this lawsuit.

64.     Instead of explaining that United Rentals had just called a number no longer associated with CWR all along, Shelton barraged the employee with a series of calculated questions designed to bait United Rentals into making statements that previewed his TCPA claims. *See generally* Ex. D.

65.     Even still, United Rentals' employee tried to get to the bottom of the issue: "So I'm still a little bit confused though…. So, Charles W. Romano Company, is that your company? Is that a company you work for?" Ex. D, Tr. at 13:19-24.

66.     Finally, Shelton told the whole truth: "No, Carrie, I'm James Shelton. I don't have anything to do with Charles W. Romano Company at all. I don't own the company. I don't work for the company. I don't even know that company … I've never spoken with them … So, I shouldn't be getting any of these calls." Ex. D, Tr. at 14:1-14.

67.     The employee responded: "Okay. I'm removing the phone number; I'm removing the email address." Ex. D, Tr. at 14:15-22.

68.    Shelton then asked—for the first time—to "make sure [his] number[ i]s on the 'do not call' list." Ex. D, Tr. at 14:23-25. The employee agreed to do so. Ex. D, Tr. at 15:1-6.

69.    United Rentals has not contacted Shelton or called (215)-XXX-XXXX since the October 11 Call, when he asked to be put on United Rentals' "Do Not Call" list.

70.    In the end, the same person who spoke with United Rentals' employee at length during the March 8 Call is very same person who admitted during the October 11 Call that he was not really "Phillip" and was not affiliated with CWR at all. Instead, it was Shelton both times.

71.    During the October 11 Call, the United Rentals employee said, "Well, see, so when I opened up the conversation with you, I actually spoke with someone in March." And in response, Shelton even agreed, "Yeah, you spoke with me." Ex. D, Tr. 10:1-3.

72.    During the March 8 Call, Shelton intentionally withheld his identity and did not tell the employee that he was not "Phillip" and was not affiliated with CWR. In fact, Shelton did not suggest at any point during the March 8 Call that he was not an interested customer or did not want to receive future calls from United Rentals.

73.    To the contrary, Shelton masqueraded as "Phillip" on behalf of CWR—going as far as to give express consent to the employee from "Phillip" to be contacted at (215)-XXX-XXXX— to fraudulently induce United Rentals into calling Shelton's cell phone in the future.

## C.    Shelton's History as a Serial TCPA Class Action Plaintiff Explains His Deception

74.    Shelton's fraudulent misrepresentations and other interactions with United Rentals were purposeful and part of a pattern of similar behavior by Shelton.

75.    Shelton has spent well-over a decade filing numerous class action lawsuits alleging TCPA violations and seeking to represent a putative class as the named plaintiff. *See, e.g.*, *Shelton v. Fast Advance Funding, LLC*, 805 F. App'x 156 (3d Cir. 2020); *Shelton v. Agentra*, 2021 U.S. Dist. LEXIS 144659, at *7 (W.D. Pa. 2021); *Shelton v. Direct*, 2019 U.S. Dist. LEXIS 150559

(D. Ohio 2019) (noting claims that "Shelton brazenly attempts to manufacture a TCPA claim out of a call he previously consented to and welcomed upon receipt."); *Shelton v. Target Advance LLC*, 2019 U.S. Dist. LEXIS 64713, at *15 (dismissing Shelton's TCPA claims for lack of standing at summary judgment because the record showed Shelton used his cell phone for business purposes).

76.    In 2024 alone, Shelton filed at least six similar lawsuits, including one in the District of Connecticut, alleging a variety of TCPA violations. *See, e.g.*, *Shelton v. Post University, Inc.*, No. 3:18-cv-01801-JCH (D. Conn. Nov. 1, 2018).

77.    Shelton is a pro at weaponizing the TCPA to line his own pockets. As one federal court put it: "James Shelton has turned the private right of action under the TCPA into a business." *Jacovetti Law, P.C. v. Shelton*, 2020 U.S. Dist. LEXIS 158663, at *1 (E.D. Pa. 2020).

## COUNT I
### (Fraudulent/Intentional Misrepresentation)

78.    United Rentals realleges, and incorporates herein by reference, the allegations in paragraphs 1 through 77 as set forth above.

79.    During the March 8 Call, Shelton made several false statements of fact when he affirmatively misrepresented and intentionally withheld critical information about his identity from United Rentals' employee.

80.    When the employee asked if she could speak with "Phillip," Shelton knew that he was not "Phillip," and thus was not the intended recipient of the call. But Shelton intentionally withheld this information to induce further action from United Rentals.

81.    Further, Shelton responded affirmatively to the employee's request to speak to "Phillip" by answering "Yeah," though he was fully aware that this statement was false and gave the employee a false impression that she was speaking to someone other than Shelton.

82.     Based on this inquiry alone, Shelton knew that United Rentals had simply called a number that was no longer associated with CWR. But Shelton intentionally withheld this information to induce further action from United Rentals.

83.     When the employee referred to Shelton by the name "Phillip" and asked him if he was still the person "in charge" of ordering rental equipment on behalf of CWR—in addition to knowing he was not "Phillip"—Shelton also knew that he was not the person "in charge" of rental orders for CWR and, in fact, had no affiliation with CWR whatsoever. But Shelton intentionally withheld this information to induce further action from United Rentals.

84.     Further, Shelton affirmatively misrepresented the nature of his relationship to CWR by answering the question above with "Mm, yeah," while knowing that this statement was false and gave the employee a false impression that she was speaking to someone affiliated with CWR.

85.     Specifically, Shelton made certain affirmative representations that he had knowledge related to CWR's account with United Rentals. For example, when the employee asked him, "It looks like [the account] was opened on March 16th, 2021." Shelton responded, "That sounds about right." Ex. A, Tr. at 3:1-2.

86.     When the employee asked Shelton to confirm the account contact information for CWR—and she gave Shelton his own (215)-XXX-XXXX "cell phone" number—Shelton knew that this number did not belong to CWR. But Shelton intentionally withheld this information to induce further action from United Rentals.

87.     In addition, though Shelton told the employee that (215)-XXX-XXXX was his "cell phone" number, he intentionally misrepresented to the employee that his cell phone was used for business purposes by agreeing that it was the "best" number for United Rentals to reach "Phillip" for follow-up calls about future equipment rentals.

88.     Future calls that United Rentals placed to (215)-XXX-XXXX, including both calls in which a United Rentals employee left a voicemail, were placed in reliance on the intentional misrepresentations and/or fraudulent omissions that Shelton made during the March 8 Call, namely that "Phillip" had given his express consent to be contacted by United Rentals at that number in the future to discuss CWR's account and business needs.

89.     United Rentals only called (215)-XXX-XXXX in direct reliance on Shelton's fraudulent conduct. Had it known the truth, United Rentals would not have called Shelton's cell phone number or left any voicemails.

90.     When Shelton did finally come clean by revealing his identity, United Rentals promptly adhered to his request to be added to a "Do Not Call" list. United Rentals has not made any further calls to the phone number (215)-XXX-XXXX or left any voicemails at that number.

91.     During the March 8 Call, Shelton point-blank lied, intentionally omitted information, and withheld the truth from United Rentals' employee, so he could improperly probe the details of CWR's account, and fraudulently induce United Rentals into making future calls.

92.     Among others, Shelton made these false statements and intentional omissions with reckless disregard for the truth of the matter.

93.     In reality, Shelton made these false statements and intentional omissions to induce future calls from United Rentals which he could claim violated the TCPA in furtherance of his money-making "business" as a serial TCPA plaintiff.

94.     United Rentals relied on Shelton's false statements and material omissions of fact to its detriment. Shelton brought the underlying action against United Rentals claiming violations of the TCPA based solely on calls and voicemails that he fraudulently induced through intentional,

practiced, and premeditated deception. Consequently, United Rentals has incurred monetary harm and damages in the amount of its attorneys' fees and costs in defending this action.

95.     Moreover, the conduct alleged above was undertaken fraudulently and with wanton disregard that warrants an award of punitive damages.

**COUNT II**
**- In the Alternative -**
**(Negligent Misrepresentation)**

96.     United Rentals realleges, and incorporates herein by reference, the allegations in paragraphs 1 through 95 as set forth above.

97.     During the March 8 Call, Shelton made several false statements of facts that he either knew or should have known were false and misleading.

98.     When the employee asked if she could speak with "Phillip," Shelton either knew or should have known that he was not "Phillip," and thus was not the intended recipient of the call.

99.     Further, Shelton responded affirmatively to the employee's request to speak to "Phillip" by answering "Yeah," and either knew or should have known this this statement would give the employee a false impression that she was speaking to someone other than Shelton.

100.    Based on this inquiry alone, Shelton knew, or should have known, that United Rentals had simply called his number intending to reach someone else.

101.    When the employee referred to Shelton by the name "Phillip" and asked him if he was still the person "in charge" of ordering rental equipment on behalf of CWR, Shelton either knew or should have known that answering this question with "Mm, yeah," would give the employee a false impression that she was speaking to someone affiliated with CWR, even though Shelton knew or should have known that he was not "Phillip" and was not the person "in charge" of rental orders for CWR and, in fact, had no affiliation with CWR whatsoever.

102.    Shelton also made representations that he had knowledge related to CWR's account with United Rentals. For example, when the employee asked him, "It looks like [the account] was opened on March 16th, 2021." Shelton responded, "That sounds about right." Ex. A, Tr. at 3:1-2. Shelton either knew or should have known that these statements were false and would give the employee a false impression that she was speaking to someone affiliated with CWR and its account with United Rentals.

103.    When the employee asked Shelton to confirm the account contact information for CWR—and she gave Shelton his own (215)-XXX-XXXX "cell phone" number—Shelton knew or should have known that this number did not belong to CWR.

104.    In addition, when Shelton told the employee that (215)-XXX-XXXX was his "cell phone" number and agreed that this number was the "best" number for United Rentals to reach "Phillip" for follow-up calls about future equipment rentals, Shelton either knew or should have known that these representations would give the employee a false impression that Shelton's cell phone was used for business purposes in connection with CWR, and that she would be able to, and had express permission to, contact CWR at that number in the future.

105.    Future calls that United Rentals placed to (215)-XXX-XXXX, including both calls in which a United Rentals employee left a voicemail, were placed in reliance on the negligent misrepresentations and omissions that Shelton made during the March 8 Call.

106.    Namely, Shelton knew or should have known that his statements during the March 8 Call would give the employee a false impression that "Phillip" had given his express consent to be contacted by United Rentals at that number in the future to discuss CWR's account and business needs.

107.    United Rentals only called (215)-XXX-XXXX in direct reliance on Shelton's negligent misrepresentations. Had it known the truth, United Rentals would not have called Shelton's cell phone number or left any voicemails.

108.    Among others, Shelton made these false statements and negligent material omissions with reckless disregard for the truth of the matter, and in furtherance of his money-making "business" as a serial TCPA plaintiff.

109.    United Rentals relied on Shelton's false statements and negligent material omissions to its detriment. Shelton brought the underlying action against United Rentals claiming violations of the TCPA based solely on calls and voicemails that United Rentals made in reliance on Shelton's false statements and negligent material omissions. Consequently, United Rentals has incurred monetary harm and damages in the amount of its attorneys' fees and costs in defending this action.

110.    When Shelton did finally come clean by revealing his identity, United Rentals promptly adhered to his request to be added to a "Do Not Call" list. United Rentals has not made any further calls to the phone number (215)-XXX-XXXX or left any voicemails at that number.

## UNITED RENTALS' PRAYER FOR RELIEF

WHEREFORE, United Rentals seeks judgment awarding it the following relief:

a) All reasonable attorneys' fees, costs, and/or other expenses incurred by United Rentals associated with bringing this Counterclaims;

b) All reasonable attorneys' fees, costs, and/or other expenses incurred by United Rentals associated with defending against the underlying TCPA action;

c) Punitive damages; and

d) Such other and further relief as this Court deems just and appropriate.

Respectfully submitted this 29th day of January 2025.

/s/ S. Stewart Haskins II
S. Stewart Haskins II (phv208437)
Allexia Bowman Roberts (phv208438)
**KING & SPALDING LLP**
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309
Phone: (404) 572-4600
Email: shaskins@kslaw.com
Email: aroberts@kslaw.com

Jeffrey P. Mueller (ct27870)
**DAY PITNEY LLP**
Goodwin Square
225 Asylum Street
Hartford, CT 06103
Phone: (860) 275-0164
Fax: (860) 881-2625
Email: jmueller@daypitney.com

*Counsel for United Rentals*

## <u>CERTIFICATE OF SERVICE</u>

I, S. Stewart Haskins II, hereby certify that on this date, January 29, 2025, I caused the foregoing UNITED RENTALS' AMENDED ANSWER AND DEFENSES TO THE CLASS ACTION COMPLAINT AND UNITED RENTALS' COUNTERCLAIMS AGAINST JAMES E. SHELTON to be electronically filed with the Clerk of the Court via the Court's CM/ECF system, which will provide electronic mail notice to all counsel of record.

*/s/ S. Stewart Haskins II*
S. Stewart Haskins II

*Counsel for United Rentals*